# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 17-cr-00653 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JULIUS RINGO | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Julius Ringo is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Law enforcement officers discovered the firearm after pulling Ringo over for committing several traffic violations. Ringo has moved to suppress all evidence derived directly or indirectly from his arrest, arguing that the officers had no lawful reason to stop his car, order him out of the car, or arrest him. This Court held an evidentiary hearing on October 11, 2018. For the reasons explained below, the Court now denies the motion to suppress.

## BACKGROUND

At the evidentiary hearing, the Government called as witnesses two Cook County Sheriff's Department Investigators involved in Ringo's arrest, James Gosling and Robert DeVogelear, who were assigned to the Sheriff's Department's Street Crimes Suppression Unit. In addition, each arresting officer's body-camera footage was introduced into evidence. Also introduced as exhibits were still images from one officer's body-camera footage, a map of the intersection where the relevant events occurred, and photographs of that intersection. Ringo declined to introduce additional evidence on his own behalf. The following summary of the evidence is thus based on the officers' testimony and the exhibits.

On the night of February 9, 2017, Gosling and DeVogelear were patrolling the Ford Heights area of Cook County together in an unmarked police vehicle. Gosling was the driver and

DeVogelear a passenger. Shortly before midnight, the officers were driving south on Woodlawn Avenue toward Lincoln Highway. At the intersection of Woodlawn and Lincoln Highway, the officers came upon a liquor store with a driveway that exited onto Woodlawn just before a traffic signal positioned at the intersection. As the officers approached the traffic signal, a white Buick driven by Ringo emerged from the liquor store's driveway. The officers were several feet away from the driveway when Ringo turned right onto Woodlawn and into the same lane as the officers.

In their testimony, both officers described Ringo as failing to yield to their vehicle before pulling into their lane and almost striking their vehicle as he did so. For example, DeVogelear described Ringo's car as "flying out" in front of them. However, this is the first of several areas where the officers' testimony and the video footage do not quite match up. Gosling's body-camera footage[1] does not support DeVogelear's description of Ringo "flying" in front of them; rather, his vehicle appears to be moving at a normal pace. And although the video does lend support to the claim that Ringo cut the officers off, it does not show Ringo almost striking the officers' vehicle. Furthermore, while Gosling testified that Ringo's maneuver caused him to slam on his brakes, the body-camera footage shows only that Gosling moderately reduced the speed of his vehicle. Indeed, on cross-examination, Gosling seemingly walked back his initial characterization of his actions, stating that he braked earlier than he would have for a red light to avoid hitting Ringo.

Gosling's body-camera footage shows the traffic signal turning yellow as Ringo turns out of the liquor store driveway onto Woodlawn. Ringo's vehicle then disappears from the video frame as it fully enters the officers' lane. Approximately one second after Ringo's white Buick disappears from the frame, the traffic signal turns red. Because Ringo's vehicle is no longer in the

---

[1] DeVogelear's body camera was positioned at an angle that failed to capture the traffic violations that led the officers to stop Ringo.

frame at that point, there is no video evidence showing him running the red light. But both Gosling and DeVogelear described Ringo as going through the red light, and nothing on the video contradicts this testimony.

Upon entering the intersection, Ringo took a left turn to head eastbound on Lincoln Highway. Immediately thereafter, Gosling activated the police vehicle's lights and siren, accelerated through the red light, and turned left onto Lincoln Highway in pursuit of Ringo's car. In response, Ringo promptly pulled over to the side of Lincoln Highway. Gosling testified that he pulled over Ringo for committing three Illinois vehicle code violations: failure to yield while entering the roadway, improper lane usage, and failure to obey a traffic control device (*i.e.*, running a red light).

DeVogelear was the first to leave the vehicle and approach Ringo's car. Gosling briefly remained in the vehicle to radio in the stop, explaining that a white Buick had cut them off and nearly hit them coming out of a parking lot. He then exited the vehicle and joined DeVogelear, who was approaching the driver's side door. Gosling approached the vehicle from the passenger's side. Both officers instructed Ringo to roll down his windows. After he complied, they saw that Ringo was the sole occupant of the white Buick. Neither officer recognized him from any previous encounters. Gosling reported smelling cigarette smoke emanating from the vehicle. Indeed, Gosling's body-camera footage shows Ringo with a lit cigarette in his hand, which he put out after being instructed to do so by DeVogelear. Neither officer reported smelling marijuana smoke.

Meanwhile, DeVogelear engaged Ringo from the driver's side of the vehicle. Ringo began by informing DeVogelear that "it's bad out here" and volunteering his license and insurance information. DeVogelear responded by telling Ringo that he almost hit the officers' vehicle

3

coming out of the parking lot and then ran a red light. In his testimony, DeVogelear denied that Ringo immediately provided him with his license, instead claiming that Ringo provided his insurance information and casino card. DeVogelear testified that Ringo had to look for his license and only presented it just before being removed from the vehicle. Yet it is plainly visible from DeVogelear's body-camera footage that Ringo promptly presented his license when DeVogelear asked him to do so. And the audio does not reveal that DeVogelear had any issue with the license upon inspecting it. Moreover, when Ringo held up his casino card to prove that he was going to go gamble, DeVogelear explicitly told him that he did not need to see it. Upon further questioning on cross-examination, DeVogelear revised his testimony and agreed that Ringo gave him his license before trying to give him his casino card.

After Ringo presented his license and proof of insurance, DeVogelear asked Ringo why he was shaking. Ringo responded that he was not supposed to be out there because Ford Heights is a bad place. When DeVogelear asked what brought him to the area, Ringo explained that he was making a stop on his way to gamble at a riverboat casino. DeVogelear then asked Ringo if he had anything he was not supposed to have in the vehicle and Ringo responded in the negative. After shining his flashlight into the backseat and doing a brief visual inspection, DeVogelear commanded Ringo to step out of the vehicle. DeVogelear testified that he instructed Ringo to leave the vehicle because Ringo was taking a long time complying with his instructions and appeared nervous. Ringo then voluntarily walked to the rear of the white Buick, where he was met by Gosling. At some point prior to Ringo being removed from the vehicle, additional Cook County Sheriff's Department Investigators arrived on the scene as backup.

As Ringo exited the vehicle, DeVogelear observed a bag of marijuana on the driver's side floor. The presence of marijuana in the vehicle is supported by DeVogelear's body-camera

4

footage, which shows a bag of what appears to be marijuana. Upon seeing the bag, DeVogelear instructed Gosling and one of the backup officers, Investigator Doyle, to place Ringo in handcuffs. When Ringo asked what he had done, DeVogelear told Ringo that he dumped a bag on the floor of the vehicle. DeVogelear then asked Ringo if he stopped at the liquor store to "buy some weed." Ringo denied that he went there to buy marijuana and said he only bought blunts at the store. Doyle told Ringo that "when you come to buy drugs, you get in trouble." Gosling testified that while he did not personally observe Ringo buying drugs, he knew from experience that the liquor store they saw Ringo leaving was a place where people bought drugs.

Once Ringo was handcuffed, one of the backup officers accused Ringo of trying to rush an officer. Gosling testified that Ringo made a step to his left that he interpreted as Ringo positioning himself for a path to flee from the police. However, neither officer's body-camera footage supports that testimony. Instead, the footage shows Ringo complying with the officers' instructions; he never appears to make any overt attempt to flee. One of the backup officers asked Ringo if he had anything on his person. Ringo responded that he had a gun in his pocket. Gosling then retrieved the firearm from Ringo's jacket pocket. The officers continued to search Ringo's person and vehicle. Their search uncovered $300 in cash but no other contraband besides the marijuana and the firearm. Gosling testified that despite pulling Ringo over for traffic violations, he could not recall whether he ever ticketed Ringo for those offenses. Nor did he have any proof that a ticket was ever written.

## DISCUSSION

Ringo has moved to suppress the direct and indirect products of his arrest. Specifically, Ringo argues that he did not commit any traffic offenses before being pulled over and that the officers had no reason to remove him from his vehicle once he was stopped. For these reasons, he

contends that his subsequent warrantless arrest and search incident to his arrest violated the Fourth Amendment to the United States Constitution.

Under the Fourth Amendment, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons.'" *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Thus, a warrantless investigatory stop of a vehicle by law enforcement must meet the reasonableness requirements of the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979). Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810.

Ringo first contends that he did not commit the traffic violations that the officers claim justified the stop. Before addressing the merits of that contention, the Court notes that there were some credibility issues with both Gosling's and DeVogelear's testimony. In particular, Gosling and DeVogelear both at times exaggerated the degree of recklessness with which Ringo was driving and the danger Ringo presented to them. As noted above, DeVogelear described Ringo's white Buick as "flying" out in front of them and both officers said that Ringo nearly hit their vehicle. Before clarifying his testimony, Gosling stated that he had to slam on his brakes to avoid a collision. But the video tells a less dramatic story. It shows the white Buick turning onto Woodlawn at what appears to be a normal speed—the vehicle certainly did not "fly" out of the liquor store driveway. While Ringo may fairly be described as cutting it a bit too close for comfort in terms of the distance between his white Buick and the officers' vehicle, the video does not show a substantial risk of the two vehicles colliding. Although Ringo may have caused the

officers to reduce their speed, their vehicle does not appear to come to an abrupt stop characteristic of a driver slamming on the brakes.[2]

Nonetheless, the video evidence does provide support for at least two of the cited traffic violations: failing to obey a traffic signal and failure to yield. Despite the fact that the white Buick exits the frame just prior to the light turning red, the Court finds that the one-second interval between when Ringo's vehicle exits the frame and when the light turns red supports a finding that the officers did have probable cause to believe Ringo committed a violation by failing to obey a traffic control device. And as previously observed, the video shows that Ringo should have yielded to the officers' oncoming vehicle before turning onto Woodlawn.

Ringo insists that Gosling's and DeVogelear's stated reasons for stopping him were pretext. Such a conclusion is perhaps supported by the officers' exaggerated testimony regarding Ringo's driving, along with the lack of evidence of Ringo actually being issued a ticket for his purported traffic violations. However, the Supreme Court has made clear that a law enforcement officer's actual motivation for making a stop is irrelevant to the reasonableness of the stop for purposes of the Fourth Amendment. *Whren*, 517 U.S. at 813. Here, the video evidence supports the officers' stated reasons for believing that Ringo committed traffic violations. Thus, their stop was reasonable even if his traffic infractions were not the true reason the officers stopped him.

The officers' actions after Ringo was pulled over also did not exceed constitutional bounds. Ringo contends that the officers had no basis for asking him to exit his vehicle—there were no weapons or contraband in plain sight and the officers had no reason to fear for their personal safety. That argument fails, as no such justification is necessary. Instead, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver

---

[2] In addition, DeVogelear's testimony that Ringo failed to present his driver's license promptly is not supported by the body-camera footage, nor is Gosling's testimony that Ringo made a move as if to flee.

to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures." *Maryland v. Wilson*, 519 U.S. 408, 412 (1997) (internal quotation marks omitted). Although unusual, it is nonetheless constitutional for a police officer to arrest a person for a traffic violation. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1622 (2015) ("Had Officer Strubble arrested, handcuffed, and taken Rodriguez to the police station for his traffic violation, he would have complied with the Fourth Amendment."); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Furthermore, after Ringo left the vehicle, DeVogelear observed in plain view a bag of marijuana, giving him grounds to place Ringo under arrest. *See United States v. Cotnam*, 88 F.3d 487, 495 (7th Cir. 1996) ("[W]hen the deputies saw the marijuana . . . they certainly had probable cause to arrest [the defendant]."); *see also In re O.S.*, No. 1-17-1765, 2018 WL 3148556, at *8 (Ill. App. Ct. June 26, 2018) (set for publication but subject to revision) ("[C]ase law holding that the odor of marijuana is indicative of criminal activity remains viable notwithstanding the recent decriminalization of the possession of not more than 10 grams of marijuana."). And once the officers had probable cause to place Ringo under arrest, it was constitutionally permissible for them to search his person. *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979).

In sum, Gosling and DeVogelear had probable cause to stop Ringo for traffic violations. Once Ringo was pulled over, the officers were permitted to remove him from the vehicle. The officers also had probable cause to arrest Ringo for either his traffic violations or possession of marijuana, and they were then constitutionally permitted to search his person incident to that

arrest. Thus, the officers' actions did not exceed constitutional bounds, and for that reason Ringo's motion to suppress is denied.

## CONCLUSION

For the foregoing reasons, Ringo's motion to suppress is denied.

ENTERED:

Dated: January 15, 2019

_____
Andrea R. Wood
United States District Judge